# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| SCHYLER AND ASSOCIATES, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause No. 2:20-CV-467-PPS-APR |
| PAOLI LAW FIRM, P.C., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This case involves two law firms wrestling over attorneys' fees stemming from a personal injury action in Montana. Plaintiff Schyler and Associates, P.C., an Indiana law firm, reached out to Defendant Paoli Law Firm, P.C., a Montana law firm, to file a lawsuit for an Indiana man and his wife relating to a trucking accident in Montana. Paoli took the case after speaking with the couple, and the law firms agreed to split a contingency fee. Paoli filed suit and ultimately reached a favorable settlement for the couple. Near the end of the Montana litigation, Paoli reached out to Schyler to discuss their fee sharing arrangement. Paoli sought to modify the fee sharing agreement since it had done all of the work. Schyler supposedly agreed. But shortly after the settlement was finalized, Schyler sued Paoli in Indiana state court for its share of the fees. Paoli removed the case to this court and now moves to dismiss for both lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). [DE 4.] Because I find that there is no personal jurisdiction in this court over Paoli, the case will be dismissed albeit without prejudice to be filed in a court where

personal jurisdiction can be had. (Likely in U.S. District Court for the District of Montana.)

**Background**

Ronald Yakimow, a resident of Indiana, was involved in a trucking accident with a driver from Idaho while traveling through Montana in 2014. [DE 5-1 at ¶ 4.] After arriving back home in Indiana, Yakimow contacted a local law firm (Schyler) for representation. [DE 3 at ¶ 15.] Because Schyler's attorneys were not licensed to practice in Montana, Schyler reached out to the Paoli firm to file the lawsuit in Montana federal court on behalf of Yakimow and his wife. [DE 5-1 at ¶¶ 4, 8.] Paoli then contacted the Yakimows to discuss representation. *Id.* at ¶ 5. Paoli drafted a Contingent Fee Agreement in Montana and sent it to Schyler and the Yakimows who agreed to it without any revisions. *Id.* at ¶ 6; [DE 3 at ¶ 17-22.] In essence, Schyler and Paoli agreed to split any fees to be garnered from the Yakimows' lawsuit.

In November 2017, Paoli filed the lawsuit on behalf of the Yakimows. [DE 5-1 at ¶ 7.] Paoli subsequently participated in two scheduling conferences in the Montana federal court, neither of which involved participation from Schyler or the Yakimows. *Id.* at ¶ 9. On April 15, 2020, Paoli (in Montana) and the Yakimows (in Indiana) participated in a telephonic conference with the court. *Id.* at ¶ 10. Schyler did not participate. *Id.* The Yakimows came to Montana frequently to visit friends and participate in depositions. *Id.* at ¶ 11. No one in the underlying litigation was deposed in Indiana. *Id.* Paoli did travel to Indiana to be present during an independent medical

examination of Mr. Yakimow. *Id.* at ¶ 15. The doctor was selected from a list proposed by defendants in the Montana litigation. *Id.* Paoli didn't choose the doctor conducting the examination or the location; defense counsel in the underlying case did. *Id.* While in Montana, Paoli and the Yakimows participated in a settlement conference and mediation. *Id.* at ¶ 12. In all, Paoli's contacts with Schyler during the nearly three-year litigation amounted to two telephone calls and a handful of emails. *Id.* at ¶ 13.

Prior to settlement, Paoli and Schyler discussed the fee arrangement. Because Paoli had done all of the work on the Yakimow case, he was concerned about their fee arrangement in light of Montana Rule of Professional Conduct 1.5(e). In response, Schyler indicated it would be agreeable to an adjustment. *Id.* at ¶ 17. But thereafter, Schyler did not return Paoli's attempts to communicate. *Id.* at ¶¶ 18-19. The underlying case settled on October 5, 2020, and Paoli sent a letter to Schyler with a fee payment shortly thereafter. *Id.* at ¶¶ 18 and 19. Rather than respond, Schyler chose litigation over negotiation; it initiated this lawsuit on November 20, 2020 in the Lake Superior Court in Lake County, Indiana to recover a greater portion of the attorneys' fees from the underlying lawsuit. [DE 3.] Paoli timely removed the case to this court. [DE 1.]

Subject matter jurisdiction is secure, but Paoli claims that there is no personal jurisdiction in this Court, and that the proper venue for this case is in the United States District Court for the District of Montana. [DE 5.]

## Discussion

Paoli seeks dismissal of this action pursuant to Rule 12(b)(2) for a lack of personal jurisdiction or under Rule 12(b)(3) for improper venue. FED. R. CIV. P. 12(b)(2) and (3). Alternatively, Paoli asks that I transfer the case to the United States District Court for the District of Montana. Schyler has put all its eggs in the personal jurisdiction basket; they've made no argument relating to venue. Therefore, because I am finding that there is no personal jurisdiction over Paoli, I need not discuss the venue issue.

Personal jurisdiction is determined by the laws of the forum state. FED. R. CIV. P. 4(k)(1)(A); *see Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Indiana's long-arm statute allows jurisdiction so long as it's consistent with the Due Process Clause of the Fourteenth Amendment. IND. R. TRIAL. P. 4.4(a); *Rodriguez v. Cavitec AG*, 2010 WL 2519715, at *4 (N.D. Ind. June 14, 2010). In other words, Indiana's long-arm statute expands personal jurisdiction to the full extent permitted by the Due Process Clause. *See LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966 (Ind. 2006). As a result, the state statutory and federal constitutional inquiries merge, and the sole question is whether due process would be offended were I to exercise personal jurisdiction over Paoli. *Tamburo*, 601 F.3d at 700; *see McKannan v.*

*Nat'l Council of Young Men's Christian Assocs. of the U.S.*, 2010 WL 4668437, at *3 (S.D. Ind. Nov. 9, 2010). IND. R. TRIAL. P. 4.4(a).[1]

Schyler alleges that Paoli breached the fee agreement and committed the tort of conversion with its handling of the settlement funds from the Montana litigation. To establish personal jurisdiction over Paoli, Schyler points to a few emails and phone calls made by Paoli to their Indiana client and one trip to Indiana for an independent medical examination as the basis for personal jurisdiction in Indiana. Then, with a lame attempt at a rhetorical flourish, Schyler concludes there is personal jurisdiction "pursuant to Civ-Pro Law 101." [DE 13 at 1.]

In order for personal jurisdiction to be consistent with due process, an out-of-state defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts [must] proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (emphasis in original) (internal citation omitted). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum state" and those contacts must be "with the forum State itself,

---

[1] Indiana's Long Arm statute was amended in 2003. The cases Schyler relies on pre-date the 2003 amendment, and therefore are not helpful to the question at hand. *See Anthem Ins. Cos. v. Tenant Healthcare Corp.*, 730 N.E.2d 1227 (Ind. 2000), and *Communs. Depot, Inc. v. Verizon Communs., Inc.*, 2002 U.S. Dist. LEXIS 14727 (S.D. Ind. 2002).

not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122 and 1126. When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); FED. R. CIV. P. 12(b)(2).

Personal jurisdiction may be established by either general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 and n.8-9 (1984). Under general jurisdiction, I look to whether Paoli's affiliations with Indiana "are so continuous and systematic as to render [it] essentially at home in" Indiana, for example if Paoli's law firm is incorporated or has its principal place of business in Indiana. *Daimler v. AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotations omitted). That is, of course, not the case here. So, the only real question is whether Paoli is subjected to specific personal jurisdiction.

Specific jurisdiction requires that Paoli have a fair warning that its particular activity may subject it to jurisdiction in Indiana. *Schaffer v. Heitner*, 433 U.S. 186, 218 (1977); *see Burger King*, 471 U.S. at 472-73. This necessarily means that specific jurisdiction is decided on a case-by-case basis. *Purdue*, 338 F.3d at 780. To show specific personal jurisdiction, Schyler must show that (1) Paoli purposefully availed itself of doing business in Indiana; (2) its alleged injuries from the breach of contract and conversion "arose out of" or are "connected with" Paoli's activities in Indiana; and (3) that exercising jurisdiction would comply with "fair play and substantial justice."

*Tamburo,* 601 F.3d at 702; *see Int'l Shoe*, 326 U.S. at 316 and 319; *see also uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 429 (7th Cir. 2010) ("Mere minimum contacts, however, are not sufficient to establish specific personal jurisdiction.") None of these requirements have been met in this case.

      First, Schyler has failed to show that Paoli purposefully availed itself of doing business in Indiana. To determine whether Paoli availed itself of Indiana requires a focus on *Paoli's* actions. *Burger King*, 471 U.S. at 475-76. Recall that Schyler initiated the contact with Paoli by soliciting it for representation of a client in Montana. [DE 5-1 at ¶¶ 3-4.] It's true that Paoli made phone calls and sent a few emails to Schyler and the Yakimows. But that was all in an effort to move the Montana litigation forward. The Yakimows could have lived in Poughkeepsie, Pittsburgh or Portsmouth. What difference would it have made? In other words, none of it had anything to do with Indiana other than the fortuity that that's where the Yakimows happen to live. And, to repeat, all of these contacts arose solely from Schyler's initial solicitation of Paoli, which is not enough to form the basis of specific jurisdiction. *See Madison Consulting Group v. State of S. Carolina.*, 752 F.2d 1193, 1202 (7th Cir. 1985) ("The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction."); *see also Brook v. McCormley*, 873 F.3d 549, 553 (7th Cir. 2017) (no personal jurisdiction in Illinois where a client sought out legal services in Arizona for Arizona property under Arizona law with Arizona lawyers.)

What's more, in deciding whether Paoli purposely availed itself to Indiana, the inquiry is not about Paoli's contacts with a few Indiana residents, but rather with the State of Indiana. *Walden*, 571 U.S. at 285 ("[The] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").[2] In other words, instead of detailing how Paoli availed itself of *Indiana*, Schyler incorrectly focuses on Paoli's contacts with *Indiana residents*. Those are different things. There is no evidence in the record that Paoli availed itself of the "benefits and protections" of Indiana's laws, such that requiring it to litigate in Indiana would be reasonable. *Int'l Shoe,* 326 U.S. at 319.

Additionally, the record does not support the contention that Paoli purposefully made contacts with Indiana. Paoli did not reach out and solicit or initiate contact with Schyler or any other Indiana business. It was the other way around. And only after the solicitation did Paoli call the Yakimows to discuss possible litigation in Montana. [DE 5-1 at ¶ 5.] Paoli drafted the fee agreement in Montana and emailed it to Schyler and the Yakimows, all of whom signed it without any changes. *Id.* at ¶ 6. Thereafter, Paoli's contacts with the Schyler firm were extremely limited. [DE 5-1 at ¶13; DE 13 at 6.]

Schyler makes much of the fact that Mr. Paoli visited Indiana once during the underlying litigation to attend an independent medical examination of Mr. Yakimow. But this examination was requested by the defendant in the Montana case, and the

---

[2] Schyler spends its sur-reply arguing that the facts in *Walden* are not analogous to this case. [DE 18.] But the fact that *Walden* may be factually distinguishable is neither here nor there; it is the points of law announced in *Walden* that are important and which, of course, bind me.

doctor conducting the examination was not selected by Paoli. The sole purpose of that trip was to further the Montana litigation, not to engage in business in Indiana. Indeed, it makes sense that a plaintiff would prefer that a medical examination be conducted close to his own residence.

Conversely, nearly everything else in the underlying case occurred in Montana. The Yakimows traveled to Montana multiple times to assist with the litigation by attending a settlement conference, assisting in discovery, and being deposed in Montana. [DE 5-1 at ¶¶ 11-12.] Other than Paoli's contact with Schyler and the Yakimows, the pleadings are void of any factual allegation that Paoli purposefully reached out to Indiana. Indeed, there is nothing in the record that comes close to demonstrating a substantial interaction with Indiana. Because Paoli did not avail itself of any of the privileges of doing business in Indiana, I cannot find that the claims at issue here would subject Paoli to suit in an Indiana court.

Nor do Schyler's alleged injuries for breach of contract and conversion arise out of Paoli's actions in Indiana. *Tamburo*, 601 F.3d at 702. Paoli drafted the allegedly breached contract (the Contingent Fee Agreement) in Montana. [DE 5-1 at ¶ 6.] Almost all of the nearly three-year Montana litigation was handled in Montana, with the Yakimows traveling to Montana multiple times to assist with the litigation by attending a settlement conference, assisting in discovery, and being deposed in Montana. *Id.* at ¶¶ 11-12. If the contract was breached and the money converted, that all happened in Montana.

Finally, and perhaps most persuasively, it would be fundamentally unfair to require Paoli to submit to jurisdiction of this court. *Int'l Shoe*, 326 U.S. at 316; *see Tamburo*, 601 F.3d at 702; *see also Purdue*, 338 F.3d at 780. The Supreme Court has made it clear that I must focus on foreseeability and whether Paoli could have anticipated being hauled into court with respect to this case. *Walden*, 571 U.S. at 285-86. To exercise personal jurisdiction over Paoli would not comport with traditional notions of fair play and substantial justice. This entire odyssey was initiated by Schyler, not Paoli. And more to the point, the basis of this lawsuit is on a contract for services drafted in Montana and performed almost entirely there as well. Without commenting on the substance of the claims, I find that fair play and substantial justice require that this case not be litigated in Indiana.

In sum, Paoli's contacts with Indiana were fleeting. There is nothing to suggest that Paoli purposefully availed itself of State of Indiana. *Id*. at 285. And at most, the contacts with Indiana were "attenuated." *Id*. at 286. Based on the totality of these circumstances, I must conclude that Schyler has failed to make a prima facie showing of specific jurisdiction over Paoli. It would be fundamentally unfair and inconsistent with any notion of Due Process to require Paoli to submit to the jurisdiction of this court. Therefore, this matter will be dismissed, but the dismissal will be without prejudice so the matter can be refiled in a court that has personal jurisdiction over Paoli. *See Sikhs for Justice v. Badral*, 736 F.3d 743, 751 (7th Cir. 2015); *see generally Pierson v. National Institute for Labor Relations Research*, 2016 WL 6093490 (N.D. Ill. 2016).

**Conclusion**

This case is hereby **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(2).

SO ORDERED on June 30, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT